**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| NORTHWESTERN MUTUAL INVESTMENT SERVICES LLC and THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,<br><br>       Plaintiffs,<br><br>v.<br><br>KAITLYN JOHNSON, DAVID MULLIGAN, NICHOLAS ZENI, and JEFFREY LANGAN,<br><br>       Defendants<br><br>DANIEL WOLFER,<br><br>       Additional Interested Person. | Case No. _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Plaintiffs Northwestern Mutual Investment Services LLC ("NMIS") and The Northwestern Mutual Life Insurance Company ("NM") respectfully seek a judgement from this Court stating that Defendants Kaitlyn Johnson, David Mulligan, Nicholas Zeni, and Jeffrey Langan (a) do not have any arbitration agreement with Plaintiffs, (b) are not "Customers" of NMIS as that term is defined in the rules of the Financial Industry Regulatory Authority ("FINRA"), and (c) therefore, cannot pursue claims against NMIS or NM in arbitration without the consent of NMIS and NM. NMIS and NM further respectfully request that this Court provide injunctive relief enjoining an arbitration Plaintiffs have commenced with FINRA's Office of Dispute Resolution against NMIS, as to which NM is, in substance, the real party in interest.

1

## THE PARTIES

1.      Plaintiff NMIS is a wholly owned, direct subsidiary of NM and is organized under Wisconsin law.  NM is the sole member of NMIS.  NMIS is a securities broker-dealer registered with FINRA and the United States Securities and Exchange Commission.

2.      Plaintiff NM is a Wisconsin corporation organized under Wisconsin law.  NM's principal place of business is Milwaukee, Wisconsin.

3.      On information and belief, Defendant Johnson is a resident of Connecticut. Defendant Johnson formerly held insurance policies with NM.  Defendant Johnson has never had an account at NMIS and has never purchased any product or service from NMIS.

4.      On information and belief, Defendant Mulligan is a resident of Connecticut. Defendant Mulligan is currently the holder of a disability insurance policy issued by NM. Defendant Mulligan previously held two life insurance policies with NM.  Defendant Mulligan has never had an account at NMIS and has never purchased any product or service from NMIS

5.      On information and belief, Defendant Zeni is a resident of Connecticut.  Defendant Zeni formerly held life and disability insurance policies with NM.  Defendant Zeni has never had an account at NMIS and has never purchased any product or service from NMIS

6.      On information and belief, Defendant Langan is a resident of Illinois.  Defendant Langan formerly held insurance policies with NM.  Defendant Langan has never had an account at NMIS and has never purchased any product or service from NMIS

7.      On information and belief, Interested Person Daniel Wolfer is a resident of Connecticut.  Mr. Wolfer currently owns a life insurance policy issued by NM.  Mr. Wolfer also previously owned other life insurance policies issued by NM.  Mr. Wolfer is, along with the Defendants, a co-Claimant of the underlying Arbitration (defined and discussed below).

## JURISDICTION AND VENUE

8.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332 since diversity of citizenship exists and the amount in controversy exceeds $75,000.

9.    NM, a Wisconsin corporation, is a citizen only of Wisconsin. 28 U.S.C. § 1332.

10.    NMIS is a citizen only of Wisconsin, since its sole member is a citizen only of Wisconsin.

11.    On information and belief, no Defendant is a citizen of Wisconsin.

12.    The amount in controversy exceeds $75,000 both by reference to the underlying Arbitration (defined and discussed below) and by reference to the economic costs to NMIS and NM of participating in the Arbitration.

13.    Specifically, as to the underlying claims, Defendants collectively seek to recover approximately $200,000 in insurance premium payments.  In the Arbitration (defined and discussed below) Defendants and Mr. Wolfer seek to recover those sums from NMIS (even though none of the payments went to NMIS).  Further, Defendants seek the reinstatement of lapsed life insurance policies, and/or refunds of premiums paid on life insurance policies that remain in effect, which would be at additional economic cost to NM.

14.    The costs NMIS would bear to litigate the Arbitration, unless the Arbitration is enjoined by this Court, would exceed $75,000.

15.    To the extent necessary, this Court also has federal question jurisdiction under 28 U.S.C. § 1331, because this Complaint seeks a declaratory judgment regarding the import and meaning of a FINRA rule, which is a question of federal law.

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Defendants and Interested Person have all consented to personal jurisdiction of this Court by virtue of the fact

that they have filed the Arbitration (defined and discussed below) for a hearing in Hartford, Connecticut. *See generally* 9 U.S.C. §§ 7, 9-11 (providing for jurisdiction over an arbitration by the U.S. District Court in the district where the arbitration takes place).

## FACTUAL BACKGROUND

### A.   The Arbitration – Procedural Status.

17.    On or around January 19, 2026, Defendants, along with Mr. Wolfer, filed a Statement of Claim ("Claim") with FINRA's Office of Dispute Resolution, which FINRA has captioned as case no. 26-00132 (the "Arbitration"). The Arbitration names Defendants and Mr. Wolfer as Claimants and NMIS, alone, as the Respondent.

18.    FINRA has instructed NMIS to file an answer to the Claim by March 18, 2026. The parties agreed by stipulation that NMIS may file an answer to the Claim by April 2, 2026. NMIS plans to file a protective answer that will incorporate by reference this Complaint. NMIS will make clear in its answer that it is not submitting to arbitral jurisdiction over the Arbitration insofar as related to the claims of the Defendants.

19.    FINRA has also asked NMIS to return a submission agreement for the Arbitration. NMIS will not execute the submission agreement unless this Court orders it to do so.

20.    NM is not a party to the Arbitration and is not subject to FINRA's jurisdiction.

### B.   The Arbitration – Claims and Context.

21.    The Claim is 28 pages long and includes numerous exhibits. It is being filed for the Court's review as Exhibit A.

22.    The Claim purports to set forth "narratives" of each Defendant's experiences with an individual named Ian Pierce.

4

23. Pierce was an associated person of NMIS and an agent for NM between June 2, 2016 and February 28, 2020.

24. Following Pierce's termination, the Managing Partner of NM's Hartford office sent each of the Defendants letters beginning as follows:

> I am writing to inform you that effective immediately, Ian Pierce is no longer associated with Northwestern Mutual and is no longer able to sell or service Northwestern Mutual insurance and investment products, including those you may have purchased through him.

Copies of these letters are being filed for the Court's review as Exhibit B.

25. Also following Pierce's termination, NMIS filed a FINRA Form U5 concerning Pierce's termination, which stated that Pierce was "permitted to resign after a customer alleged that loans were taken from her [] life insurance policy without her consents [and] transferred to [Pierce's] bank account." This information promptly became publicly available on FINRA's "Brokercheck" website, where it remains to this day.

26. The Arbitration Claim alleges, in substance, that Pierce continued to interact with each of the Defendants after his termination from NMIS and NM.

27. For instance, Defendants Mulligan and Zeni allege that Pierce pretended to remain the servicing agent on their NM policies and collected payments from them in cash in 2021 and later. *See* Exhibit A at 15-16.

28. As another example, Defendant Johnson alleges that, in 2022 and 2023, Pierce impersonated an NM supervisor and a FINRA enforcement attorney in order to persuade her that her NM policies remained in effect. *See* Exhibit A at 9.

29. Insofar as determinable from the Claim, the Defendants' allegations all revolve around actual life insurance policies issued by NM, some of which Pierce fraudulently claimed remained in effect after their lapse.

30.   None of these life insurance policies were securities.

31.   No Defendant alleges the purchase of any security or other product from NMIS, at any time.

32.   No Defendant alleges the purchase of any security from Pierce at any time.

33.   While the Claim makes passing reference to "investments," the Claim also clarifies that the "investments" at issue are life insurance policies.  *See* Exhibit A at 13 ("[Pierce] sold [Defendant] Zeni two whole life policies as an 'investment vehicle.'"); *id.* at 13-14 ("Pierce also sold [Defendant Mulligan] a whole life policy as an investment vehicle.").

34.   NMIS does not have any record of having sold any security or other product or service to any of the Defendants.

35.   NMIS has never carried an account for any of the Defendants.

36.   Of the Defendants, only Defendant Langan had any contacts with NMIS. Specifically, Defendant Langan applied for a variable annuity contract but was declined.  No money changed hands between Langan and NMIS, and no contract was formed between Langan and NMIS.

**C.   No Relevant Arbitration Agreement Exists, and FINRA Rule 12200 Is Inapplicable.**

37.   The Claim does not allege the existence of any written or oral arbitration agreement between NMIS and any of the Defendants, and NMIS is unaware of any such agreement.

38.   Instead, the Claim alleges that NMIS is obligated to submit to arbitration with the Defendants pursuant to FINRA Rule 12200 because NMIS is a FINRA member and, Defendants contend, "this dispute arises out of the business activities of [NMIS] and its former registered representative, Ian Pierce."  Exhibit A at 3.

39.   FINRA Rule 12200 provides:

Parties must arbitrate a dispute under the Code if

Arbitration under the Code is either:

(1) Required by a written agreement, or

(2) Requested by the customer;

The dispute is between a customer and a member or associated person of a member; and

The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

40.     Rule 12200 does not require arbitration here for at least three reasons.

41.     First, none of the Defendants are "customers" of NMIS as that term is defined in the Second Circuit.

42.     Second, the Arbitration does not "arise[] in connection with the business activities of NMIS" but rather (at most) in connection with the business activities of NM, which is not a FINRA member.

43.     Third, the Claim is exclusively about "insurance business activities" that are explicitly carved out from Rule 12200.

### 1.     The Defendants Are Not "Customers" of NMIS or Its Associated Persons.

44.     The Court of Appeals has explained that a "customer" of a FINRA member under FINRA Rule 12200 is "one who, while not a broker or dealer, either (1) purchases a good or service from a FINRA member, or (2) has an account with a FINRA member." *See Citigroup Glob. Markets Inc. v. Abbar*, 761 F.3d 268, 275-76 (2d Cir. 2014).

45.     Since none of the Defendants either purchased a good or service from NMIS or had an account with NMIS, none is a "customer" of NMIS for purposes of Rule 12200.

46.     While arbitration may be compelled under Rule 12200 by a person who is a "customer" of an associated person of a FINRA member (rather than a customer of the member

itself), *see Oppenheimer & Co. v. Mitchell*, 135 F.4th 837, 848-49 (9th Cir. 2025), that provision applies only if the person purchased *investment banking or securities products or services* from the associated person.  *See Lincoln Fin. Sec. Corp. v. Foster*, No. 20-cv-1132 (VLB), 2021 WL 1197534 (D. Conn., Mar. 29, 2021) (*"Lincoln II")*; *see also Land v. Rokah*, 682 F. Supp. 3d 385, 395-96 (adopting analysis in *Lincoln II* and enjoining arbitration that did not facially involve "investment banking and securities business activities").

47.     As such, an associated person's act of "recommending the purchase of a term life insurance policy" is insufficient to satisfy FINRA Rule 12200.  *See Lincoln II* at *6.

48.     In addition, Rule 12200 does not allow potential arbitration claimants to call themselves "customers" of a member firm by virtue of interactions with a former associated person after the former associated person is no longer registered with the member firm.  *See generally Oppenheimer* 135 F.4th at 849 & n.3.

### 2.     The Claim Does Not "Arise in Connection With" "Investment Banking or Securities Business Activities."

49.     The Claim does not arise from "Investment Banking or Securities Business Activities" because the only products at issue are life insurance policies, which are, by definition, not securities.  *See, e.g.*, *Lincoln Fin. Sec. Corp. v. Foster*, No. 20-cv-1132 (VLB), 2020 WL 6150916 at *2 (D. Conn., Oct 20, 2020) (*"Lincoln I")* (and cases cited therein).

50.     Moreover, the Claim does not arise from, or involve, any products or services sold by NMIS or sold by Pierce in his capacity as an associated person of NMIS.  Instead, the Claim concerns life insurance policies offered by NM, and the burden of any award would necessarily fall on NM.

### 3. In Any Event, the "Insurance Business" Carveout Applies.

51. Rule 12200, like many other FINRA rules, is written with the specific intent of avoiding the regulation of insurance and insurance companies. That is because FINRA is itself subject to regulation by the SEC, and the SEC has no authority over non-variable insurance contracts such as those the Claim puts at issue. *See* Exhibit C. (FINRA publication for the public stating: "Term and whole life insurance policies are regulated by state insurance commissioners.").

52. It would, therefore, be a misapplication of Rule 12200 to require arbitration of a dispute that, like this one, concerns exclusively non-security life insurance policies.

### 4. Mr. Wolfer Is Also Not Entitled to Arbitrate His Claims.

53. Similarly, Interested Person Wolfer's claims do not arise from NMIS's securities business but rather from NM's insurance business.

54. Mr. Wolfer allegations are limited to three lapsed life insurance policies, each of which is alleged to have required an annual premium payment. *See* Exhibit A at 11.

55. Consistent with Mr. Wolfer's allegations, NM's records indicate that Mr. Wolfer previously held three now-lapsed life insurance policies issued by NM. (Mr. Wolfer also owns an active life insurance policy with NM.)

56. Since all of Mr. Wolfer's claims arise from the insurance business activities of NM, rather than the securities business of NMIS, and since there is no applicable written arbitration agreement between Mr. Wolfer and NMIS, Mr. Wolfer's claims are also not arbitrable under FINRA Rule 12200.

### COUNT I: DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201

57. NMIS and NM reallege by reference all preceding paragraphs of this Complaint.

58. No arbitration agreement exists between either Plaintiff and any of the Defendants.

59.    There is no basis, including under FINRA's Rules, to require Plaintiffs to arbitrate with any of the Defendants because Defendants are not, and never were, customers of Plaintiffs and also because the Claims do not arise in connection with NMIS's securities business but rather (at most) in connection with NM's insurance business.

60.    Declaratory relief is appropriate because the dispute between the parties is definite and concrete, affecting the parties' adverse legal interests with sufficient immediacy.

61.    Plaintiffs, therefore, request a declaratory judgment from this Court pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 that Plaintiffs have no obligation to arbitrate any claims that Defendants have or could have brought in the Arbitration.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request:

A.    Entry of a declaratory judgment that Plaintiffs have no obligation to arbitrate any and all claims Defendants have or could have brought in the Arbitration;

B.    Entry of an order or orders preliminarily and permanently enjoining Defendants from arbitrating against Plaintiffs any and all claims they have or could have brought in the Arbitration;

C.    Entry of an order requiring Defendants to pay any attorneys' fees, costs, and disbursements incurred by Plaintiffs in the Arbitration *after* Plaintiffs provided notice to Defendants that Plaintiffs are not submitting to arbitration *unless* Defendants voluntarily and immediately notify FINRA's Office of Dispute Resolution that the Arbitration is stayed by stipulation until the resolution of this matter by this Court.

D.    Such other and further relief as the Court deems fair, just, and proper.

10

Dated: April 1, 2026                         MORGAN, LEWIS & BOCKIUS LLP
      Hartford, CT

                                          By:      */s/ Michael D. Blanchard*
                                              Michael D. Blanchard

Michael D. Blanchard (ct25891)
Christopher M. Wasil (ct28578)
One State Street
Hartford, CT 06103
T. 860.240.2700
F. 860.240.2701
michael.blanchard@morganlewis.com
christopher.wasil@morganlewis.com

Jeff Goldman
One Federal Street
Boston, MA 02110
T. 617.951.8000
F. 617.951.8736
jeff.goldman@morganlewis.com
*Pro hac vice application forthcoming*

Janna Joassainte
101 Park Avenue
New York, NY 10178
T. 212-309-6000
F. 212-309-6001
janna.joassainte@morganlewis.com
*Pro hac vice application forthcoming*

*Counsel for Plaintiffs*

11